# UNITED STATES DISTRICT COURT

for the

## Western District of New York

Case No. **26 CV 137**

*(to be filled in by the Clerk's Office)*

TeJuan Fish 75783

))))))))))))))

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

-v-

**JURY TRIAL:** Yes ☒ No___

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names. Do not include addresses here.)*

FILED

JAN 2 2 2026

MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Prisoner Complaint)

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name _Tejuan Fish_

All other names by which you have been known: _____

ID Number _ICN: 75783_

Current Institution _Erie County Correctional Facility_

Address _11581 Walden Avenue_

_Allen_    _NY_    _14004_
    *City*     *State*     *Zip Code*

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. Make sure that the defendant(s) listed below are identical to those contained in the above caption. For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1

Name _William Granville_

Job or Title *(if known)* _Erie County Sheriff_

Shield Number _Unknown_

Employer _Erie County Sheriff department_

Address _10 delware Ave_

_Buffalo_    _NY_    _14202_
    *City*     *State*     *Zip Code*

☒ Individual capacity    ☒ Official capacity

Defendant No. 2

Name _____

Job or Title *(if known)* _____

Shield Number _____

Employer _____

Address _____

_____
    *City*     *State*     *Zip Code*

☐ Individual capacity    ☐ Official capacity

Defendant No. 3
    Name                                 _____
    Job or Title *(if known)*           _____
    Shield Number               _____
    Employer                      _____
    Address                         _____

|  | *City* | *State* | *Zip Code* |
|---|---|---|---|

☐ Individual capacity     ☐ Official capacity

Defendant No. 4
    Name                                   _____
    Job or Title *(if known)*           _____
    Shield Number               _____
    Employer                      _____
    Address                         _____

|  | *City* | *State* | *Zip Code* |
|---|---|---|---|

☐ Individual capacity     ☐ Official capacity

## II.     Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

    ☐ Federal officials (a *Bivens* claim)

    ☒ State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

    *1st 5th, 8th, 14th Adament U.S. Constitational Violation*

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

**D.**    Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

Sheriff Willam, Granvill Got Search warrantswith no probable cause and violated my Rights, took cash, property, and destroyed thing in my house and put false Alcuation out to have other law official harrass me or been in Jail 9½ mounth behind this

## III.    Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

- ☒ Pretrial detainee
- ☐ Civilly committed detainee
- ☐ Immigration detainee
- ☐ Convicted and sentenced state prisoner
- ☐ Convicted and sentenced federal prisoner
- ☒ Other *(explain)*    Parole Detainer

## IV.    Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

**A.**    If the events giving rise to your claim arose outside an institution, describe where and when they arose.

False Press Release, family and friend harrass, UNlawful Inpresonment Search of Residence; Search of Vehicle

**B.**    If the events giving rise to your claim arose in an institution, describe where and when they arose.

**C.** What date and approximate time did the events giving rise to your claim(s) occur?

November 14th 2024

**D.** What are the facts underlying your claim(s)? (For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)

It was 3 seperated search warrants with out probable cause
Items was tooken and destroyed / cash was tooken / my family
was effected my friends was effected I lieve with my sister
and her 5 kids my father and his wife
Search warrants will be attach and officer statement
of me being harrass

## V.  Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

I have suffered from public comtempt and charecter
Assanation by destroying repatation publecly wich has
cause me mental anguish and added stress wich in fact
deltermental to my health reptation

## VI.  Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

I am seeking damanges in the form of $5,000,000
Punitive Compensatory damanges of $5,000,000

## VII.    Exhaustion of Administrative Remedies Administrative Procedures

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures. Your case may be dismissed if you have not exhausted your administrative remedies.

A.    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☐ Yes

☒ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

B.    Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☐ Yes

☐ No

☒ Do not know

C.    Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☐ Yes

☐ No

☐ Do not know

If yes, which claim(s)?

**D.**    Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☐ Yes

☒ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☐ Yes

☒ No

**E.**    If you did file a grievance:

1.   Where did you file the grievance?

_____

2.   What did you claim in your grievance?

_____

3.   What was the result, if any?

_____

4.   What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. (Describe all efforts to appeal to the highest level of the grievance process.)

_____

**F.**  If you did not file a grievance:

1.  If there are any reasons why you did not file a grievance, state them here:

_____ N/A _____

2.  If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

_____ N/A _____

**G.**  Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

_Search Warrants / Property that was taken._

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII. Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☒ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

_____

(Rev. 01/21) Complaint for Violation of Civil Rights (Prisoner)

**A.**   Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☒ Yes

☐ No

**B.**   If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1. Parties to the previous lawsuit

   Plaintiff(s)   TEJUAN FISH

   Defendant(s)   John C Garcia, Jeremy Lehing

2. Court *(if federal court, name the district; if state court, name the county and State)*

   United States Dristric Court Western District New York

3. Docket or index number

   25cv507

4. Name of Judge assigned to your case

   I don't Know

5. Approximate date of filing lawsuit

   6/23/25

6. Is the case still pending?

   ☒ Yes

   ☐ No

   If no, give the approximate date of disposition.

7. What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

   Pending

## IX.     Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.     For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:     1/9/26

| | |
|---|---|
| Signature of Plaintiff | Jequan Fish |
| Printed Name of Plaintiff | TEJUAN FISH     Pro-se |
| Prison Identification # | ICN: 75783 |
| Prison Address | Erie County Correctional Facility 11581 (walden) Ave |
| | Alden          NY     14004 |
| | *City*          *State*     *Zip Code* |

### B.     For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Address

*City*          *State*     *Zip Code*

Telephone Number

E-mail Address

Print     Save As...     Add Attachment     Reset

## SEARCH WARRANT APPLICATION

Buffalo City COURT
COUNTY OF ERIE, NEW YORK

IN THE MATTER OF

The application of Deputy William Granville, Deputy Sheriff of Erie County, for a WARRANT authorizing the search of:

**127 Lemon Street (Upper/Lower Apartment) Buffalo NY 14204**, described as a 2-story multiple family dwelling with red and grey siding, white trim, and the numerals "127" affixed above the front door; to include all exterior curtilage, common areas, and detached garages or sheds, and any storage associated with the upper apartment;

And any other person therein or thereat.

for certain property, to wit: cocaine in violation of Article 220 of the New York State Penal Law, drug paraphernalia (to include scales/baggies), proceeds from illicit drug trafficking, and any personal papers or documents or cellular telephones-photographs and data therein, and house keys which would tend to identify the owner, lessee or whomever has custody or control over the premises or items seized, or deemed to be records or evidence that tends to demonstrate that an offense or crime was committed, or that a particular person participated in the commission of an offense or crime, which property is unlawfully possessed, or has been used, or is possessed for the purpose of being used to commit the commission of an offense, or constitutes evidence or tends to demonstrate that an offense was committed or that a particular person participated in the commission of an offense or crime.

**STATE OF NEW YORK: COUNTY OF ERIE: SS:**

William Granville, being duly sworn, deposes and says:

1. I am a Deputy of the Erie County Sheriff's Office assigned to the Narcotics and Intelligence Unit. I have been a police officer for approximately 14 years and during this time I have conducted numerous drug trafficking investigations.

2. a) Your affiant, through a narcotics investigation and confidential source information discovered that **Tejuan A. Fish**, DOB 11/08/1985, is actively selling, storing, and transporting large quantities of cocaine in the Buffalo area and throughout Erie County.  On today's date law enforcement began surveillance at 65 Somerton Avenue in the Village of Kenmore.  **Fish** was observed departing the residence and getting into his vehicle LLT6959. **Fish** was surveilled from the Kenmore address to 2 Pullman in the city of Buffalo then to 127 Lemon Street and then back to the address on Somerton Ave in the Village of Kenmore. Law enforcement did initiate a traffic stop on **FISH** shortly after he departed Somerton with an unknown female. The female passenger in the vehicle admitted to uniformed deputies that she possessed narcotics which were given to her by **FISH** as they were being pulled over.

b)  A criminal history check reveals that **Tejuan A. Fish** has three (3) felony convictions in the state of New York (1) **Criminal Possession Controlled Substance- 2ⁿᵈ Narcotic drug 4ozs or more** on February 10,2020. (2) **Criminal Possession Narcotic Drug- 4ᵗʰ degree** on September 13ᵗʰ 2019. (3) **Criminal Possession Controlled substance- 5ᵗʰ: cocaine 500 milligrams** on April 21ˢᵗ 2004 and is currently on NYS Parole.

c) A query of parole reveals that FISH is paroled in the upper apartment.

d) A query of the DMV database reveals that **Fish's** home residence is 127 Lemon Street Buffalo NY APT 1.

3. Based upon my past experience it is further requested that said premises/vehicle be entered pursuant to CPL 690.35 without giving notice of authority and purpose, upon the grounds that (a) there is a reasonable cause to believe that the items sought to be seized, cocaine may be easily and quickly destroyed or disposed of if not seized forthwith; and (b) the giving of such notice may endanger the life or safety of the executing police officers. It is my experience that cocaine may be easily flushed down the toilet or otherwise disposed of.

4. It is further requested the search be made executable pursuant to CPL 690.35 during anytime of the **day or night**.

5. It is further requested that the search be made of any person thereat or therein based upon the following specific reasons:

a) that the form and amount of cocaine as packaged for street sale is quickly and easily concealable upon a person,

b) that the cash proceeds from illicit drug trafficking can be and usually are held upon the person of, responsible for, or associated with such drug trafficking, and drug dealers use other persons to hold and transport their drugs and proceeds.

c) that based upon my training and experience it is common for drug traffickers to carry concealed weapons, and they may use such weapons against police officers to avoid apprehension, effect an escape or to protect their illicit drug supply and/or proceeds.

6. It is further requested that the issuing Judge allow the seizure of any personal papers, documents or premises/vehicle keys which would tend to identify the owner, lessee or whomever has custody or control over the premises/vehicle or items seized, or deemed to be records or evidence that tend to demonstrate that an offense or crime was committed, or that a particular person participated in the commission of an offense or crime, or any proceeds from the illicit drug trafficking.

Based upon the foregoing reliable information and of my personal knowledge as aforesaid, there is probable cause to believe that the following, cocaine in violation of Article 220 of the New York State Penal Law, drug paraphernalia (to include scales/baggies), proceeds from illicit drug trafficking, and any personal papers, cellular telephones, documents or vehicle keys which would tend to identify the owner, lessee or whomever has custody or control over the premises or items seized, or deemed to be records or evidence that tends to demonstrate that an offense or crime was committed, or that a particular person participated in the commission of an offense or crime.

WHEREFORE, I respectfully request that the court issue a warrant and order of seizure in the form annexed authorizing the search of:

**127 Lemon Street (Upper/Lower Apartment) Buffalo NY 14204**, described as a 2-story multiple family dwelling with red and grey siding, white trim, and the numerals "127" affixed above the front door; to include all exterior curtilage, common areas, and detached garages or sheds, and any storage associated with the upper apartment.

And any other person therein or thereat.

during anytime of the **day or night**, without giving notice of my lawful purpose pursuant to CPL 690.35,

and directing that if such contraband or evidence, or any part thereof be found, that it be seized and brought before the court together with such other and further relief as the court may deem proper.

_William G____

William Granville, Deputy
Erie County Sheriff's Office


Sworn to before me this 14th day of November, 2024

Honorable Phillip Dabney,
Buffalo City Court

**SEARCH WARRANT**

Pursuant to Section 690.05 Et Seq. of the Criminal Procedure Law

Buffalo City Court
COUNTY OF ERIE, NEW YORK

IN THE NAME OF THE PEOPLE OF THE STATE OF NEW YORK
TO: Any Police Officer/Task Force Officer

Proof, by affidavit, having been this day made before me, by
Deputy William Granville and the law enforcement investigation that there is
probable cause to believe, Pursuant to Section 690.10 C.P.L. that certain
property is unlawfully possessed, TO WIT: cocaine, in violation of Article 220
of the New York State Penal Law.

YOU ARE THEREFORE, COMMANDED, within 10 days of the date of issuance of this
WARRANT **(during anytime of the day or night)** to make an immediate search of:

**127 Lemon Street (Upper/Lower Apartment) Buffalo NY 14204**, described as a 2-
story multiple family dwelling with red and grey siding, white trim, and the
numerals "127" affixed above the front door; to include all exterior curtilage,
common areas, and detached garages or sheds, and any storage associated with the
upper apartment.

And any other person therein or thereat.

for the following: cocaine, in violation of Article 220 of the New York State
Penal Law, drug paraphernalia (to include scales/baggies), proceeds from illicit
drug trafficking and for any personal papers or documents, cellular phones-
photos and data therein, or house keys which tend to identify the owner, lessee
or whomever has custody or control over the premises, or items seized, and
records or evidence that tend to demonstrate that an offense or crime was
committed or that a particular person participated in the commission of an
offense or crime and seize said property forthwith.

YOU ARE, THEREFORE, FURTHER COMMANDED to enter said premises/vehicles without
giving notice of authority and purpose pursuant to Section 690.35 of the
Criminal Procedure Law, and if you find the same or any part thereof, to bring
it forthwith before me at City of Buffalo, County of Erie, New York.

Dated at the said County of Erie, New York

The day of November 14th, 2024 at 4:27 M PM

PDJ

Acting County

Honorable Phillip Dabney,
TONAWANDA TOWN COURT
P.C.CJ County

## SEARCH WARRANT APPLICATION

TONAWANDA TOWN COURT
COUNTY OF ERIE, NEW YORK

IN THE MATTER OF

The application of Deputy William Granville, Deputy Sheriff of Erie County, for a WARRANT authorizing the search of:

**65 Somerton Avenue (Upper Apartment) Kenmore NY 14217,** described as a 2.5 story multiple family dwelling with blue siding, white trim, and the numerals "65" affixed to the right shutter next to the front door; to include all exterior curtilage, common areas, and detached garages or sheds, and any storage associated with the upper apartment; (photo attached).

The person of: **Tejuan Fish,** a black male, date of birth 11/08/1985; approximately 5'6'' in height and weighing approximately 160Lbs.(photo attached);

And vehicle bearing **LLT6959,** 2016 Lincoln MKZ, black in color, bearing VIN#3LN6L2J95GR602618.

And any other person therein or thereat.

for certain property, to wit: cocaine in violation of Article 220 of the New York State Penal Law, drug paraphernalia (to include scales/baggies), proceeds from illicit drug trafficking, and any personal papers or documents or cellular telephones-photographs and data therein, and house keys which would tend to identify the owner, lessee or whomever has custody or control over the premises or items seized, or deemed to be records or evidence that tends to demonstrate that an offense or crime was committed, or that a particular person participated in the commission of an offense or crime, which property is unlawfully possessed, or has been used, or is possessed for the purpose of being used to commit the commission of an offense, or constitutes evidence or tends to demonstrate that an offense was committed or that a particular person participated in the commission of an offense or crime.

**STATE OF NEW YORK: COUNTY OF ERIE: SS:**

William Granville, being duly sworn, deposes and says:

1. I am a Deputy of the Erie County Sheriff's Office assigned to the Narcotics and Intelligence Unit. I have been a police officer for approximately 14 years and during this time I have conducted numerous drug trafficking investigations.

2. a) Your affiant, through a narcotics investigation and confidential source information discovered that **Tejuan A. Fish,** DOB 11/08/1985, is actively selling, storing, and transporting large quantities of cocaine in the Buffalo area and throughout Erie County.  On today's date law enforcement began surveillance in the area of 65 Somerton Avenue in the Village of Kenmore. **Fish** was observed departing the residence and getting into his vehicle LLT6959. **Fish** was surveilled from the Kenmore address to 2 Pullman in the city of Buffalo then to 127 Lemon Street and then back to the address on Somerton Ave in the Village of Kenmore. Law enforcement did initiate a traffic stop on **FISH** shortly after he departed

Somerton with an unknown female. The female passenger in the vehicle admitted to uniformed deputies that she possessed narcotics which were given to her by **FISH** as they were being pulled over.

b) A criminal history check reveals that **Tejuan A. Fish** has three (3) felony convictions in the state of New York (1) **Criminal Possession Controlled Substance- 2nd Narcotic drug 4ozs or more** on February 10,2020. (2) **Criminal Possession Narcotic Drug- 4th degree** on September 13th 2019. (3) **Criminal Possession Controlled substance- 5th: cocaine 500 milligrams** on April 21st 2004 and is currently on NYS Parole.

c) A query of utilities reveals that Endesha Hawkins has active account at 65 Somerton Avenue upper Kenmore NY 14217 and is **Fish's** romantic partner.

d) A query of the DMV database reveals that **Fish's** home residence is 127 Lemon Street Buffalo NY APT 1.

3. Based upon my past experience it is further requested that said premises/vehicle be entered pursuant to CPL 690.35 without giving notice of authority and purpose, upon the grounds that (a) there is a reasonable cause to believe that the items sought to be seized, cocaine may be easily and quickly destroyed or disposed of if not seized forthwith; and (b) the giving of such notice may endanger the life or safety of the executing police officers. It is my experience that cocaine may be easily flushed down the toilet or otherwise disposed of.

4. It is further requested the search be made executable pursuant to CPL 690.35 during anytime of the **day or night**.

5. It is further requested that the search be made of any person thereat or therein based upon the following specific reasons:

a) that the form and amount of cocaine as packaged for street sale is quickly and easily concealable upon a person;

b) that the cash proceeds from illicit drug trafficking can be and usually are held upon the person of, responsible for, or associated with such drug trafficking, and drug dealers use other persons to hold and transport their drugs and proceeds.

c) that based upon my training and experience it is common for drug traffickers to carry concealed weapons, and they may use such weapons against police officers to avoid apprehension, effect an escape or to protect their illicit drug supply and/or proceeds.

6. It is further requested that the issuing Judge allow the seizure of any personal papers, documents or premises/vehicle keys which would tend to identify the owner, lessee or whomever has custody or control over the premises/vehicle or items seized, or deemed to be records or evidence that tend to demonstrate that an offense or crime was committed, or that a particular person participated in the commission of an offense or crime, or any proceeds from the illicit drug trafficking.

Based upon the foregoing reliable information and of my personal knowledge as aforesaid, there is probable cause to believe that the following, cocaine in violation of Article 220 of the New York State Penal Law, drug paraphernalia (to include scales/baggies), proceeds from illicit drug trafficking, and any personal papers, cellular telephones, documents or vehicle keys which would tend to identify the owner, lessee or whomever has custody or control over the premises or items seized, or deemed to be records or evidence that tends to

demonstrate that an offense or crime was committed, or that a particular person participated in the commission of an offense or crime.

WHEREFORE, I respectfully request that the court issue a warrant and order of seizure in the form annexed authorizing the search of:

**65 Somerton Avenue (Upper Apartment) Kenmore NY 14217**, described as a 2.5 story multiple family dwelling with blue siding, white trim, and the numerals "65" affixed to the right shutter next to the front door; to include all exterior curtilage, common areas, and detached garages or sheds, and any storage associated with the upper apartment;(photo attached).

The person of: **Tejuan Fish**, a black male, date of birth 11/08/1985; approximately 5'6'' in height and weighing approximately 160Lbs.(photo attached);

And vehicle bearing **LLT6959**, 2016 Lincoln MKZ, black in color, bearing VIN#3LN6L2J95GR602618.

And any other person therein or thereat.

during anytime of the **day or night**, without giving notice of my lawful purpose pursuant to CPL 690.35,

and directing that if such contraband or evidence, or any part thereof be found, that it be seized and brought before the court together with such other and further relief as the court may deem proper.

William Granville, Deputy
Erie County Sheriff's Office

Sworn to before me this 14th day of November, 2024

Honorable Judge Lennon,
TONAWANDA TOWN COURT

## SEARCH WARRANT

Pursuant to Section 690.05 Et Seq. of the Criminal Procedure Law

TONAWANDA TOWN COURT
COUNTY OF ERIE, NEW YORK

IN THE NAME OF THE PEOPLE OF THE STATE OF NEW YORK
TO: Any Police Officer/Task Force Officer

Proof, by affidavit, having been this day made before me, by
Deputy William Granville and the law enforcement investigation that there is
probable cause to believe, Pursuant to Section 690.10 C.P.L. that certain
property is unlawfully possessed, TO WIT: cocaine, in violation of Article 220
of the New York State Penal Law.

YOU ARE THEREFORE, COMMANDED, within 10 days of the date of issuance of this
WARRANT **(during anytime of the day or night)** to make an immediate search of:

**65 Somerton Avenue (Upper Apartment) Kenmore NY 14217**, described as a 2.5 story
multiple family dwelling with blue siding, white trim, and the numerals "65"
affixed to the right shutter next to the front door; to include all exterior
curtilage, common areas, and detached garages or sheds, and any storage
associated with the upper apartment;(photo attached).

The person of: **Tejuan Fish**, a black male, date of birth 11/08/1985;
approximately 5'6'' in height and weighing approximately 160Lbs.(photo
attached);

And vehicle bearing **LLT6959**, 2016 Lincoln MKZ, black in color, bearing
VIN#3LN6L2J95GR602618.

And any other person therein or thereat.

for the following: cocaine, in violation of Article 220 of the New York State
Penal Law, drug paraphernalia (to include scales/baggies), proceeds from illicit
drug trafficking and for any personal papers or documents, cellular phones—
photos and data therein, or house keys which tend to identify the owner, lessee
or whomever has custody or control over the premises, or items seized, and
records or evidence that tend to demonstrate that an offense or crime was
committed or that a particular person participated in the commission of an
offense or crime and seize said property forthwith.

YOU ARE, THEREFORE, FURTHER COMMANDED to enter said premises/vehicles without
giving notice of authority and purpose pursuant to Section 690.35 of the
Criminal Procedure Law, and if you find the same or any part thereof, to bring
it forthwith before me at Tonawanda Town Court, County of Erie, New York.

Dated at the said County of Erie, ~~New York~~
The day of November 14th, 2024 at 2:05PM

_____
Honorable Judge Lennon,
TONAWANDA TOWN COURT

**SEARCH WARRANT APPLICATION.........IN CAMERA HEARING HELD**

BUFFALO CITY COURT
COUNTY OF ERIE, NEW YORK

**IN THE MATTER OF**

The application of Deputy William Granville, Deputy Sheriff of Erie County, for a **WARRANT** authorizing the search and the installation of a Global Positioning Satellite (GPS) tracking device inside of:

New York registration LLT6959, a 2016 Lincoln MKZ, Black in color, bearing VIN#3LN6L2J95GR602618.

and for certain property, to wit: cocaine in violation of Article 220 of the New York State Penal Law, proceeds from illicit narcotics trafficking, and any personal papers or documents or cellular telephones-photographs and data therein, and house/vehicle keys which would tend to identify the owner, lessee or whomever has custody or control over the vehicle or items seized, or deemed to be records or evidence that tends to demonstrate that an offense or crime was committed, or that a particular person participated in the commission of an offense or crime, which property is unlawfully possessed, or has been used, or is possessed for the purpose of being used to commit the commission of an offense, or constitutes evidence or tends to demonstrate that an offense was committed or that a particular person participated in the commission of an offense or crime.

**STATE OF NEW YORK: COUNTY OF ERIE: SS:**

Deputy William Granville being duly sworn, deposes and says:

1. I am a Deputy of the Erie County Sheriff's Office assigned to the Narcotics and Intelligence Unit. I have been a police officer for approximately 14 years and during this time I have conducted numerous drug trafficking investigations.

2.   a) Your affiant had received information from a reliable confidential source(s) that **Tejuan Fish**, a black male, date of birth 11/8/1985, is actively selling and transporting quantities of cocaine in the Buffalo area and throughout Erie County. **Tejuan Fish** utilizes the above listed vehicle to conduct narcotics transactions. The confidential source(s) have observed **Tejuan Fish** operating New York Registration LLT6959, a 2016 Lincoln MKZ, Black in color, bearing VIN#3LN6L2J95GR602618 within the last 10 days. The confidential source(s) reports that they have observed **Tejuan Fish** in possession of Cocaine in the past ten (10) days.

   b) Further testimony to be developed in camera.

   1. During the month of October 2024 ECSO Narcotics and intelligence unit conducted surveillance on Tejuan Fish

observing him making multiple suspected narcotics transactions. Tejuan Fish was identified through a reliable confidential source(s)and that a record of the in-camera testimony of investigating deputies has been made and preserved.

2. A criminal history check shows that Tejuan Fish has three (3) Felony convictions with one being a violent felony for possession of a weapon and criminal possession of Narcotics in the 1st degree. Fish is currently on NYS Parole with a max expiration date of July 11, 2028.

3. The issuing judge to seal all in camera minutes related to this investigation.

4. It is further requested that the issuing Judge seal the *in-camera* testimony and all exhibits, notes, and recordings related thereto pursuant to *People v. Darden*, 34 NY2d 177 (1974) and that said documents only be released to a Judge reviewing the material pursuant to an indictment or released to the appellate division should the occasion arise.

5. It is further requested that should the issuing Judge receive a motion to unseal the *in-camera* testimony, and all exhibits, notes, and recordings related thereto, that your affiant or a legal representative of the affiant be provided notice and the opportunity to be heard in opposition of the unsealing.

3. a) It is further requested that the search (including undetected installation of a GPS tracking device) be made executable pursuant to CPL 690.35 during any time of the **day or night,** in that the need for the installation of said device needs to occur covertly, to enable investigators to safely observe the 2016 Lincoln MKZ, Black in color, bearing VIN#3LN6L2J95GR602618 during **Tejuan Fish's** narcotics trafficking endeavors.

b) It is further requested that the search (including installation of a GPS tracking device) be initiated without giving notice of the executing officers' authority and purpose on the grounds that such notice would endanger the safety of investigators, the confidential source (s), and defeat the purpose of the GPS tracking device installation.

4. It is further requested that the issuing Judge allow the seizure of any personal papers, documents, house/vehicle keys or cellular telephones including any records, data and photographs stored therein, which would tend to identify the owner, lessee or whomever has custody or control over the vehicle and or items seized, or deemed to be records or evidence that tend to demonstrate that an offense or crime was committed, or that a particular person participated in the commission of an offense or crime.

Based upon the foregoing reliable information and of my personal knowledge as aforesaid, there is probable cause to believe that the aforesaid, **Tejuan Fish**, will drive the aforesaid New York registration LLT6959, a 2016 Lincoln MKZ, black in color, bearing VIN#3LN6L2J95GR602618 to distribute cocaine throughout Buffalo, NY and Erie County, NY in violation of Article 220 of the New York State Penal Law.

**WHEREFORE,** I respectfully request that the court issue a warrant and order of seizure in the form annexed authorizing the search and installation of a Global Positioning Satellite tracking device: And New York registration LLT6959 a 2016 Lincoln MKZ, black in color, bearing VIN#3LN6L2J95GR602618.

during any time of the **day or night** and without giving notice of my lawful purpose pursuant to CPL 690.35,

and directing that if such contraband or evidence, or any part thereof be found, that it be seized and brought before the court together with such other and further relief as the court may deem proper.

No previous application in this matter has been made in this or any other court, or to any other Judge, Justice or Magistrate.

_____
Deputy William Granville
Erie County Sheriff's Office

Sworn to before me this 7 th day of November 2024

2:21 pm.

_____
Honorable Judge Phillip Dabney
BUFFALO CITY COURT

SEARCH WARRANT
Pursuant to Section 690.05 Et Seq. of the Criminal Procedure Law
BUFFALO CITY COURT
COUNTY OF ERIE
STATE OF NEW YORK

IN THE NAME OF THE PEOPLE OF THE STATE OF NEW YORK
**TO: Any Police Officer/Task Force Officer**

Proof, by affidavit, having been this day made before me, by Deputy William Granville and by in camera testimony by Investigating deputies that there is probable cause to believe pursuant to CPL 690.10 that a New York registration LLT6959, a 2016 Lincoln MKZ, black in color, bearing VIN#3LN6L2J95GR602618; will be used to facilitate the sale and distribution of cocaine, in violation of Article 220 of the New York State Penal Law;

that certain property has been used or is possessed for the purpose of being used to commit a crime or offense or conceal the commission of a crime or offense and to prevent a crime or offense from being discovered, to wit: New York registration LLT6959, a 2016 Lincoln MKZ, grey in color, bearing VIN#3LN6L2J95GR602618.

that certain property constitutes evidence or tends to demonstrate that a crime or offense was committed or that a particular person participated in the commission of a crime or offense.

To wit: New York registration LLT6959, a 2016 Lincoln MKZ, black in color, bearing VIN#3LN6L2J95GR602618. and contents including any personal papers, maps, storage receipts, documents, cellular phones and records, data and photographs contained therein, which would tend to identify the owner, lessee or whomever has custody or control over the motor-vehicle seized, or deemed to be records or evidence that tends demonstrate that an offense or crime was committed, or that a particular person participated in the commission of an offense or crime, which property is unlawfully possessed, or has been used, or is possessed for the purpose of being used to commit the commission of an offense, or constitutes evidence or tends to demonstrate that an offense was committed or that a particular person participated in the commission of an offense or crime.

**YOU ARE THEREFORE, COMMANDED**, within 10 days of the date of issuance of this WARRANT (at any time of the daytime or night-time) to install a Global Positioning Satellite (GPS) tracking device inside New York registration LLT6959, a 2016 Lincoln MKZ, grey in color, bearing VIN#3LN6L2J95GR602618.

**YOU ARE THEREFORE FURTHER COMMANDED**, to enter said motor vehicle, without giving notice of authority and purpose, and at

any time of the **day or night**, pursuant to Section 690.35 of the Criminal Procedure Law, and if you find any property described herein above or any part thereof, to bring it forthwith before me at the Buffalo City Court, in the County of Erie, New York.

Dated at the said County of Erie, New York

The 7th day of November 2024 at: _2:21_ AM/PM

Honorable Judge Phillip Dabney
BUFFALO CITY COURT

PRESS RELEASE

CONTACT INFORMATION

LIENTENANT JEREMY R. LEHING

PUBLIC INFORMATION OFFICER

OFFICE: 716 858-7630

MOBILE: 716 440-3684

JEREMY. LEHING@ERIE.GOV

RELEASE DATE 11\15\24                    SHERIFF JOHN C. GARCIA

### NARCOTIC INVESTIGATION LEAD TO ARREST OF A BUFFALO MAN

Buffalo N.Y. -Erie county sheriff John c, Garcia report arrest of 36-year old Tejuan A. Fish of buffalo. following an investigation led by erie county sferiff narcotic and intellgence unit and assisted by the village of kenmore police department ,buffalo police intelligence unit F.B.I safe street task force and N.Y.S parole . Tejuan Fish is a knowing serial offender.

On november 14th, erie county sheriff conducted survellance on a somerton avenue residence in the village of kenmore. detecive observed Fish arrrive in a vehicle and enter a residence on somerton avenue and departed a short time later with a female companion . Fish was observed committing a vehicle and traffic law offense and was stopped. It determained that Fish handed off a large quantity of crack cocain, cocain and fetanyl to the female companion. Fish was arrested.

Later that day E.C.S.O. narcotic and intellgence personnel excueted a search warrant signed by tonawada judge Pat Lennon at 65 somerton avenue, kenmore n.y. This residence is belived by law enforcement to be a "STASH" residence for Fish, deputies and detectives recovered scales, drug packaging materials and a loaded taurus 9mm with a large capacity ammunition feeding devise. officers also seized a large amount of u.s currency and jewery.

A second search warrent signed by judge Philip Dabney was execued last night at Fish residence located at 127 lemon street buffalo. officers recovered a large amont of suspected cocain and seized FISH range rover belived to be purchased with illicit proceeds.

FISH WAS CHARGED WITH THE FOLLOWING

1 criminal possession of narcotic drug/inten to sell 3rd degree class B felony (2counts)

2 criminal possession of controlled substance /narcotic 3rd degree class B felony (2counts)

3 criminal possession of a loaded firearm 2nd degree class C felony

4 criminal possession of a weapon 3rd degree class D felony

5 criminal use of drug paraphernall 2nd degree class A miasdermanner (5count)

FISH WAS REMANDED TO THE ERIE COUNTY HOLDING CENTER PENDING HIS ARRAIMENT IN COURT.

WILLIAM GRANVILLE

```
 1  02273-2024
    MARCH 31, 2025
 2  9:31 A.M.
    TDW
 3
 4  W I L L I A M    G R A N V I L L E, sworn, testified:
 5
 6          GRAND JURY FOREPERSON:  Please state your name and
 7  spell both your first and last name for the record.
 8          THE WITNESS:  William Granville, G-R-A-N-V-I-L-L-E.
 9          GRAND JURY FOREPERSON:  And what -- in what city,
10  town or village do you work for?
11          THE WITNESS:  I apologize.  10 Delaware Ave,
12  Buffalo, New York.
13          BY MS. KALMAN:
14          Q.      Deputy, how are you currently employed?
15          A.      Erie County Sheriff's Office Narcotics and
16  Intelligence Unit.
17          Q.      How long have you been employed by the Erie
18  County Sheriff's Office?
19          A.      Right around fourteen years.
20          Q.      How long have you been assigned to the
21  Narcotics Intelligence Unit?
22          A.      Right around fourteen years.
23          Q.      Directing your attention to November of 2024,
24  were you investigating an individual named Tejuan Fish?
25          A.      Yes.
```

3

1       Q.     What were you investigating Tejuan Fish for?

2       A.     Narcotics trafficking.

3       Q.     And through your investigation, did you learn

4 that Tejuan Fish went by any other names?

5       A.     Yes.  He also used the name Sommerville.

6       Q.     And is that for his last name?

7       A.     Yes.

8       Q.     And what is Tejuan Fish also known as Tejuan

9 Sommerville's date of birth?

10      A.     11/8/85 I believe.

11      Q.     Handing you what's been marked for

12 identification as Grand Jury Exhibit 1, can you tell us what

13 that is?

14      A.     Certificate of Conviction.

15      Q.     And is Tejuan Fish's name on that document?

16      A.     Yes.

17      Q.     Is his date of birth?

18      A.     Yes.

19      Q.     Is that a certified document?

20      A.     Yes.

21      Q.     And does that document indicate if Tejuan

22 Fish has been previously convicted of any crimes?

23      A.     Yes.

24      Q.     Is there also a raised seal?

25      A.     Yes.

WILLIAM GRANVILLE

1      Q.    At this time, I'm moving Grand Jury Exhibit 1

2  into evidence pursuant to CPL Sections 60.60 and 190.30,

3  Subsection 1.  I will also instruct you at this time that

4  you are not to consider this evidence for the propensity of

5  Tejuan Fish to commit this crime or any other crime.  It is

6  merely being offered into evidence to prove an element of

7  the charges I will be instructing you on later.

8      Now, Deputy, through your investigation, did you

9  conduct surveillance of Tejuan Fish?

10     A.    Yes.

11     Q.    And through that surveillance, were you able

12 to connect him to the address of 65 Somerton in the Village

13 of Kenmore?

14     A.    Yes.

15     Q.    Is that also in the County of Erie?

16     A.    Yes.

17     Q.    And how were you able to connect Tejuan Fish

18 also known as Tejuan Sommerville to that address?

19     A.    I placed a GPS tracker on his vehicle and it          ← When?

20 was there multiple times.  I also watched him walk in and

21 out of the front door of that residence multiple times.

22     Q.    Now, specifically, on November 14th of 2024,

23 did you conduct surveillance of Tejuan Sommerville?

24     A.    Yes.

25     Q.    And on that date, did you observe Tejuan Fish

5

WILLIAM GRANVILLE

1   coming and going from 65 Somerton?

2        A.    Yes.

3        Q.    Approximately how many times?

4        A.    Just that day?

5        Q.    Yes.

6        A.    I believe it was twice.

7        Q.    And while you were surveilling him, did you

8   observe him using keys to enter that address?

9        A.    Yes, for the front door.

10       Q.    Now, did there come a time when you stopped

11  and detained Tejuan Fish on November 14th, 2024?

*He never was on the traffic stop*

12       A.    Yes.

13       Q.    And when you detained Tejuan Fish, did he

14  have keys on his person?

15       A.    Yes.

16       Q.    Now, on November 14th, 2024 at around three

17  o'clock p.m., did you conduct a search of 65 Somerton Ave in

18  the Village of Kenmore?

19       A.    Yes.

20       Q.    Why were you searching that particular

21  address?

22       A.    We actually pulled over Tejuan Fish and he

23  had suspected narcotics in the vehicle and we had a search

24  warrant for the residence of 65 Somerton.

25       Q.    And what is a search warrant?

WILLIAM GRANVILLE

1        A.      It gives us -- it's signed by a judge.  It
2   gives us the right to enter premises without keys if we
3   don't have them.
4        Q.      Did you have a target for that search
5   warrant?
6        A.      Yes.  Tejuan Fish.
7        Q.      When you executed the search warrant, were
8   the keys Tejuan Fish had on his person used to enter into
9   that residence?
10       A.      Yes.
11       MS. KALMAN:  That's all the questions I have for
12  Deputy Granville.  I will also instruct you at this time you
13  did hear testimony regarding narcotics.  You're just to
14  consider that information to explain why Deputy Granville
15  did what he did in that investigation, not for the
16  propensity of Tejuan Fish to commit the crimes I will be
17  instructing you on later.
18       Does anyone have any questions?  Seeing no hands,
19  thank you.  You are excused.
20       My next witness is Deputy John Zani.
21
22
23
24
25

                                                            7

Szymborski - Zosh - Cross                    28

1    Q.    Is it okay if I just call you Sergeant?

2    A.    Yes, that's fine.

3    Q.    Just so I don't screw it up.  I apologize.

4    A.    Yes.

5    Q.    So I believe you stated on examination from

6    Mr. Garvin here that you received some information from a

7    William Granville, is that correct?

8    A.    Correct.

9    Q.    And how do you know William Granville?

10    A.    I know him through just my police career, and I'm

11    also assigned to our Intelligence Unit within the

12    Cheektowaga Police Department, so it's fairly common for

13    other officers to speak with each other.

14    Q.    Okay.  So when you say, I am part of the

15    Intelligence Unit for the Cheektowaga Police Department, can

16    you just elaborate that for the Court and for me, please?

17    What does that mean?

18    A.    Yeah.  So it's a newer unit.  Pretty much we kind

19    of keep eyes on, like, social media stuff going on with

20    ECAC.  We try to make contact with the other neighboring

21    agencies to see if there's any specific people, places or

22    things that are standing out that we should be aware of or

23    officer safety issues.

24    Q.    Okay.

25    A.    It's not a full-time, full-time spot.

Szymborski - Zosh - Cross

1      Q.   Have you ever had an opportunity to actually work

2  with William Granville as part of the Erie County Sheriff's

3  Office of Narcotics and Intelligent Unit?

4      A.   In what aspect?

5      Q.   In a professional manner.

6      A.   Yeah.

7      Q.   So you guys actually worked collaboratively

8  together, correct?

9      A.   Yes.

10     Q.   As a matter of fact, you have Granville's cell

11  phone number, don't you?

12     A.   I do.

13     Q.   And when you made that phone call from the scene,

14  you were calling from your cell phone to his cell phone,

15  correct?

16     A.   Correct.

17     Q.   Can you tell me, at what point in time did you

18  turn over that information to the District Attorney's

19  Office, any call logs or information associated with texts

20  or phone calls that you made to Mr. Granville about this

21  particular case?

22           MR. GARVIN:  Objection as to relevance.

23           THE COURT:  I don't know that it's

24    irrelevant.  It was done during the course of this

25    stop, which is the subject of the hearing.  Overruled.

Szymborski - Zosh - Cross                              30

1              THE WITNESS:  I did make him aware of it, but

2       to my knowledge, no requests were made.

3  BY MR. ZOSH:

4       Q.    Okay.  So you did talk to someone at the District

5  Attorney's Office and let them know that this phone call did

6  happen, correct?

7       A.    Yes.

8       Q.    And correct me if I'm wrong, did you actually send

9  a text message to Deputy Granville as well while on scene?

10      A.    I don't believe so.  I think it was just the two

11  phone calls.

12      Q.    Okay.  Now, I think you said prior to this date

13  of -- and it's April 5th of 2025?

14      A.    Correct.

15      Q.    -- you had received a communication from William

16  Granville to take a lookout for Mr. Fish, correct?

17      A.    Not more a lookout, it was being aware of the

18  possibility of officer safety if we encounter him or not.

19      Q.    Okay.  And he specifically told you in that

20  conversation, look out for a gun, am I correct?

21      A.    Correct.

22      Q.    Did he also make you aware that he had a prior gun

23  case that he was out of jail on from November the 14th of

24  2024?

25      A.    I don't believe so.  I think that was common

Szymborski - Zosh - Cross                    31

1    knowledge.  It was in the news too.

2         Q.    Okay.  So you knew at that point in time that he

3    had previously been arrested for a gun, correct?

4         A.    Yeah.  A gun or narcotics, something along the

5    lines.

6         Q.    And during the stop, did you have any

7    communication with Mr. Fish that you -- where you told him,

8    I know you have a gun case pending, and that's one of the

9    reasons you asked him to get out of the vehicle?  Am I

10   correct?

11        A.    No.

12        Q.    Okay.  That communication never occurred?

13        A.    Never occurred.

14        Q.    Okay.  But I think you testified that the reason

15   you asked him to get out of the vehicle, because you were

16   worried about officer safety for a gun, correct?

17        A.    One of the reasons, correct, yep.

18             MR. ZOSH:  Okay.  And Judge, may I move

19        freely around the courtroom?

20             THE COURT:  You may.

21             MR. ZOSH:  Thank you.

22             THE COURT:  You may approach the witness if

23        you wish.

24   BY MR. ZOSH:

25        Q.    Can you tell me when you -- you know what a gun

Szymborski - Zosh - Cross

32

1    feels like, correct?

2        A.    Correct.

3        Q.    It's made of steel, correct?

4        A.    Usually, yep.

5        Q.    It's hard, right?

6        A.    Um-hum.

7        Q.    So if you were patting someone down, you

8    wouldn't -- you would be able to feel a gun, am I correct?

9        A.    Typically, yes.

10        Q.    And am I correctly stating that at no point in

11    time when you did the first pat-down of Mr. Fish did you

12    feel a gun?

13        A.    That's correct.

14        Q.    Or a knife?

15        A.    That's correct.

16        Q.    Or brass knuckles?

17        A.    I would say that's fair.

18        Q.    Or nunchucks?

19        A.    Yeah.

20        Q.    Okay.  So none of those things in your mind for

21    officer safety were present when you patted him down,

22    correct?

23        A.    Correct.

24        Q.    Okay.  Now, when you approached the window, he was

25    compliant.  You asked him a question, he gave you an answer,

Szymborski - Zosh - Cross    33

1  correct?

2      A.   Correct.

3      Q.   Did he ask -- did you ask him for license and

4  registration for that vehicle?

5      A.   Yes.  I believe just license at that time.

6      Q.   Okay.  And so he gave you the license, as

7  requested?

8      A.   Um-hum.

9      Q.   Correct?

10     A.   Correct.

11     Q.   He was compliant in the vehicle, correct?

12     A.   Correct.

13     Q.   Can you tell me, as part of your duties as a

14  sergeant for the Cheektowaga Police Department, can you

15  write a citation for illegal tints?

16     A.   Yes.

17     Q.   So normal protocol would be write a citation,

18  here's your ticket, go to Cheektowaga Town Court on some

19  other day, am I correct?

20     A.   Yeah.  Barring other circumstances, correct.

21     Q.   Right.  So, you know, again, and then the reason

22  you're asking him to get out is for this officer safety

23  thing because you got some information from Deputy

24  Granville, correct?

25     A.   Partly.  But the residue also is the other reason.

Szymborski - Zosh - Cross

1    Q.    Well, I'll get to that.

2    A.    Um-hum.

3    Q.    But you testified for officer safety.  The residue

4    is not gonna hurt you, is it?

5    A.    No.

6    Q.    I mean, in the back --

7    A.    It shouldn't.

8    Q.    If there's a spec of whatever it is in the back of

9    this car, is that gonna hurt you for officer safety?

10                   MR. GARVIN:  Objection, argumentative.

11                   THE COURT:  It's overruled.

12                   THE WITNESS:  I would say generally, no.

13   BY MR. ZOSH:

14   Q.    Right.  But the reason you get him out is because

15   you want to see if he's got a gun, right?

16   A.    Well, he's out because of the residue and the

17   officer safety.

18   Q.    Okay.  So the purpose of rolling down the back

19   window was to see if there's anybody in there, right?

20   A.    Right.

21   Q.    So you asked him to roll down the back window and

22   no one's in there, right?

23   A.    Yeah.

24   Q.    Okay.  And you -- you're kind of having a

25   conversation with him saying, just get on out, man, I'll

Szymborski - Zosh - Cross

1   just do a quick pat-down and we'll let you get on your way,

2   sum and substance, right, when you asked him to exit the

3   vehicle?

4       A.   I -- I don't know the exact verbiage I told him of

5   why to get out at that time, but we do have a discussion,

6   yep.

7       Q.   And he complies and gets out of the vehicle?

8       A.   He eventually does, yeah.

9       Q.   And again, you pat him down, don't feel any

10  dangerous instruments, no guns, no knives, anything else,

11  correct?

12      A.   Correct.

13      Q.   Okay.  Now, you talked about this residue that you

14  saw after he rolled down the back window, okay?  At what

15  point did you make a determination to get Mr. Fish out of

16  that vehicle?  When you walked back to your car?

17      A.   I don't -- if he's already out of the vehicle

18  or --

19      Q.   No, he wasn't out of the vehicle.

20      A.   Okay.

21      Q.   Because he was sitting in his vehicle, you had a

22  conversation with --

23      A.   Initially you're talking about?

24      Q.   Yeah.

25      A.   Okay.

Szymborski - Zosh - Cross

1    Q.    And he gave you his license?

2    A.    Um-hum.

3    Q.    And you asked him to roll down the window, you

4  looked in there, no one's in there, right?

5    A.    Correct.

6    Q.    Then you went back to your car?

7    A.    Correct.

8    Q.    And when you went back to your car, the first

9  thing you did was call Granville, correct?

10    A.    Correct.

11    Q.    Okay.  Because he told you there was a gun

12  potentially on Mr. Fish, correct?

13    A.    Or in the vehicle, correct.

14    Q.    Or in the vehicle.  So when Deputy Granville

15  called you to tell you about Mr. Fish, to be on the lookout

16  for him, can you tell me, how did that occur?  Was it on a

17  cell phone, was it on your business phone, was it on a

18  e-mail through the Cheektowaga Police Department, or what

19  was it on?

20    A.    I believe it was in person.

21    Q.    In person.  Where did this in-person conversation

22  take place?

23    A.    We -- exactly where it took place, can't be

24  positive, but we interact at -- he's come to our station

25  before.  We've assisted on other scenes with them.  We've

Kerry A. Meegan, CSR, NYRCR
Official Supreme Court Reporter

Szymborski - Zosh - Cross

37

1    met up at other locations before too.

2        Q.    Okay.  Anywhere in your police documentation did

3    you put down like a BOLO or information for other officers,

4    keep on the lookout for Tejuan Fish per Deputy Granville, he

5    may have a gun?

6        A.    No.

7        Q.    So you didn't put out that information to any

8    other officer in Cheektowaga and kept it all to yourself?

9        A.    No.

10       Q.    Okay.

11       A.    I'll --

12       Q.    So how did you disseminate the information to your

13   patrol officers that you supervise to keep on the lookout

14   for Mr. Fish based on Deputy Granville?

15       A.    So the vehicle itself was entered into our Flock

16   system, so the officers that have access to that specific

17   Flock system could be aware of it.

18       Q.    Okay.  So let's back up now.  We're talking about

19   this, you said Fox?

20       A.    Our Flock.

21       Q.    Spell it for the record, please.

22       A.    F-L-O-C-K.

23       Q.    What does that mean, if you know?

24       A.    So it's a -- essentially, it's a license plate

25   reader system throughout the town, and most of the adjoining

1   towns and towns next to us also have it.  I believe City of

2   Buffalo is the only one that doesn't.  So essentially, if a

3   vehicle passes a certain point where the stationary Flock

4   systems are, it will give you an alert of where that vehicle

5   is relatively soon.  There's a lag time to it.

6       Q.   Okay.  So your testimony is you received a phone

7   call from Granville and then you put that -- his license

8   plate into the system, correct?

9       A.   Correct.

10      Q.   And then any time you check that license plate, it

11  could tell you possibly where he might be?

12      A.   Potentially, yeah, or at least where it last hit.

13      Q.   Okay.  And is there anybody that is in charge of

14  this Flock system at the Cheektowaga Police Department?  Is

15  it like a specific person who is in charge of this?

16      A.   Yeah.  So our patrol captain is essentially in

17  charge of it, but each officer is given their own account

18  and they have the ability to either make their own list,

19  they could get a department-wide list or they could get

20  sometimes a county-wide or state-wide list, and they also

21  have the ability to -- since the other departments next to

22  them have their own separate list, they could request to be

23  put onto whatever notifications those departments have too.

24      Q.   So then you could -- as a sergeant for the

25  Cheektowaga Police Department, you can make a request to the

Szymborski - Zosh - Cross

39

1  Buffalo Police Department to get on their pole reader

2  account for license plates?

3      A.   I don't know.  I've never done it.

4      Q.   Okay.

5      A.   But I've --

6      Q.   Okay.  So on this information you received from

7  Deputy Granville, you put this -- his license plate into the

8  system?

9      A.   Correct.

10     Q.   And then Deputy Granville gave you the

11 registration, the license plate number and a description of

12 Mr. Fish, correct?

13     A.   Yeah.  Mainly the license plate, just --

14     Q.   And as a sergeant, when you received this

15 information from Deputy Granville, what other aspects did

16 you do about an investigation into Mr. Fish prior to this

17 stop?

18     A.   Honestly, not a whole lot.  I mean, he just had

19 the case in to the news.  If anything, for our due

20 diligence, we may check the county-wide database of any

21 contacts, but as far as other investigative elements,

22 there's not like a whole lot for us to do.

23     Q.   Did you go in and look at his rap sheet?

24     A.   I don't believe so.  We don't have access to his

25 actual criminal history.

Szymborski - Zosh - Cross

40

1    Q.    How did you know what Mr. Fish looked like?  Is

2  there some way you were able to identify him?

3    A.    Yeah.  So you could -- there's two different

4  systems.  There's either the actual rap sheet, which you

5  can't have unless you run it and they commit a crime, or

6  there's the local database, which was formally, like Web

7  RICI it's called, and you can pull up recent mugshots or

8  tattoos or stuff like that.

9    Q.    Am I correct you did that in this particular case

10  before you put his license plate in?

11    A.    I would say that's fair, or if not after, just

12  to --

13    Q.    Okay.  So essentially, based on the information

14  that Granville gave to you, you already started surveilling

15  Mr. Fish for when he came into Cheektowaga, correct?

16    A.    I guess describe "surveil."  I did some background

17  as much as I could.

18    Q.    Well, you did some background investigation and

19  then you got his license plate into this Flock system, which

20  can track him when he comes -- it pings as to when he comes

21  into Cheektowaga, correct?

22    A.    Yes.

23    Q.    Okay.  Did it ping and is that why you went to the

24  location you were at when Mr. Fish was coming by you?

25    A.    Yes.  I was in that location, yes, correct.

Szymborski - Zosh - Cross                    41

1    Q.    But it pinged and you knew he was coming, correct?

2    A.    In the general area, yes.

3    Q.    Okay.  So it's fair to state you were in the

4    process of gonna be pulling him over no matter what was on

5    his window, correct?

6    A.    No.

7    Q.    Okay.  Now, you mentioned something about some

8    residue, some white residue, and that's all -- you could see

9    the little white things in the picture.  I mean, they're

10   barely noticeable, but you can see something, right?

11   A.    Yes.

12   Q.    You tested that residue, right, at the scene?

13   A.    Yes.

14   Q.    And what was the test result?

15   A.    It was negative.

16   Q.    So you tested the stuff at the scene, it was

17   negative, but you continued to detain Mr. Fish behind the

18   vehicle after you searched him one time, correct?

19   A.    He was patted the one time, yes.

20   Q.    Okay.  So at that point in time you knew there was

21   no gun, no knife, no nunchucks, no brass knuckles, no safety

22   issues at that time, correct?

23   A.    For the most part, yes.

24   Q.    And you knew that the testing of the white residue

25   that you thought was narcotics was negative, correct?

Szymborski - Zosh - Cross                42

1    A.    Correct.

2    Q.    At any point in time after you detained Mr. Fish

3  did you speak to Deputy Granville in the time my client was

4  getting booked, through the time my client was getting

5  booked?

6    A.    Honestly, I don't recall offhand.  I would have to

7  check or review body cam or whatever the case may be, but

8  there could be a chance, yeah.

9    Q.    Now, again, are there periods of time when you

10 will stop your body camera footage?

11   A.    Not the footage, only sound.

12   Q.    The sound?

13   A.    Yeah.

14   Q.    I apologize.

15   A.    Yeah.

16   Q.    Let me rephrase that.  Are there periods of time

17 as a sergeant working for the Cheektowaga Police Department

18 do you mute the sound-recording availability?

19   A.    Yes.

20   Q.    Okay.  And do you recall, based -- when you

21 reviewed this footage, did that occur in this particular

22 case?

23   A.    Yeah.

24   Q.    And it occurred on multiple times, correct?

25   A.    It's -- I don't know if it's just the one lag time

Szymborski - Zosh - Cross                    43

1    on it, the initial one.   I think it remains on afterward.

2         Q.    Okay.

3         A.    If I'm -- I think it's just the one time.

4         Q.    Okay.   And that's because you were having a

5    conversation with another officer or something?

6         A.    Another officer, and then just due to the

7    sensitivity of the information with Mr. Granville.

8         Q.    Okay.   And again, so due to the sensitivity, can

9    you just elaborate as to why you paused it when you were

10   discussing Deputy Granville?

11        A.    Due to the fact that the information was derived

12   from a confidential informant, I didn't want to jeopardize

13   any identification of that informant.

14        Q.    Did you know who the confidential informant was?

15        A.    No.

16        Q.    Okay.   But it was just the fact that there was a

17   confidential informant?

18        A.    Yeah.

19        Q.    You wanted to hide that from the recording?

20        A.    No, not want to hide it, want to protect that

21   person's identification.

22        Q.    I guess it's a matter of perspective.   One person

23   wants to hide.

24        A.    Yeah.

25        Q.    One person wants to protect.

44

Szymborski - Zosh - Cross

1    A.    Because truthfully, I had him on speaker phone

2   because I knew it was going to be picked up by the car

3   camera anyways, but just to do the due diligence, if they

4   have ongoing cases, to protect the ID.

5            MR. ZOSH:  I'm having a problem with my

6        computer, I apologize.  I just gotta figure out why I

7        can't move this around.  Excuse me a second, Judge.

8              (Pause in the proceedings.)

9            MR. ZOSH:  Computers.  I apologize.

10            THE COURT:  Were you going to use it?

11            MR. ZOSH:  No.  I was just going through my

12        notes and I just can't get through it.  I apologize.

13            THE COURT:  You want to take a brief recess

14        so you can do it?

15            MR. ZOSH:  If I can have just a couple

16        minutes, Judge, I apologize, just to see if I can get

17        this up and running.

18              (A short recess was taken.)

19            THE COURT:  So the record's clear, defendant

20        and all counsel are present.  We are ready to resume

21        the hearing.

22            MR. ZOSH:  Thank you, Judge.

23   BY MR. ZOSH:

24    Q.    Sergeant, real quick.  So you ordered my client

25   out of the vehicle, correct?

Kerry A. Meegan, CSR, NYRCR
Official Supreme Court Reporter

1    A.    Correct.

2    Q.    He did not consent to you to search his vehicle,

3    correct?

4    A.    Correct.

5    Q.    He did not consent to you to search him, correct?

6    A.    Correct.

7    Q.    And you've watched your video, correct?

8    A.    Correct.

9    Q.    When your video comes on from your body-worn

10   camera and you hit the button, correct?

11   A.    Um-hum.

12   Q.    Then it starts to record?

13   A.    Yes.

14   Q.    Now, when you hit the button, it actually records

15   the thirty seconds prior to you hitting the button?

16   A.    In most cases.  It depends.  You can have it

17   either in a normal mode or you can have it in a sleep mode.

18   If you have it in a sleep mode, it will go from that second

19   that you actually push it, but if you have it in the open

20   normal mode there, it should draw back the thirty seconds

21   for you.

22   Q.    When you reviewed this body-worn camera footage,

23   did it go back thirty seconds prior to you punching that

24   button or did it go from the time you pushed the button?

25   A.    Oh, gosh, I'm not positive.

Szymborski - Zosh - Cross

46

1    Q.    Okay.  And when my client was stopped initially

2    for the tints, you stated that you got his license and you

3    went back to your vehicle, correct?

4    A.    Correct.

5    Q.    And that at that moment you called for another

6    backup car, correct?

7    A.    Yeah, around that time.

8    Q.    And then you also called for Deputy Granville,

9    correct, or called Deputy Granville?

10    A.    In that time, yeah.

11    Q.    Okay.  And then did you run the license plate when

12    you were sitting there?

13    A.    Previously.

14    Q.    Okay.  And the registration was valid, correct?

15    A.    Correct.  I believe so, yeah.

16    Q.    And then his license was valid, correct?

17    A.    Correct.

18    Q.    And when the other cars approached, how many other

19    cars showed up on scene?

20    A.    Just one car.

21    Q.    And how many other officers were there when you

22    were there interacting with Mr. Fish?

23    A.    Two.

24    Q.    Okay.  So three officers together?

25    A.    Yep.

47

Szymborski - Zosh - Cross

1    Q.   And all the officers, I presume, had their

2   officer's uniform on?

3    A.   Yes.

4    Q.   And you all had your weapons?

5    A.   Correct.

6    Q.   Okay.  And was there another civilian standing

7   around videotaping you officers during this detention?

8    A.   I believe there was -- there might have been two

9   people.  I think a female comes on scene initially on his

10  side, and I think there might be someone across the street

11  too.

12   Q.   Okay.  And other than the illegal tints, there

13  were no other traffic violations for stopping Mr. Fish,

14  correct?

15   A.   Correct.

16         MR. ZOSH:   I don't have any further questions

17   at this time, Judge.  Thank you.

18         THE COURT:  Mr. Garvin, any redirect?

19         MR. GARVIN:  Briefly, Judge.

20  REDIRECT EXAMINATION

21  BY MR. GARVIN:

22   Q.   Sergeant, I just want to clarify some of the

23  timing.  At the time of these negative results with regard

24  to the suspected residue, was the defendant already under

25  arrest for the fighting or does that happen prior to the

Szymborski - Garvin - Redirect 48

1   fighting?

2       A.    That happens prior to the fighting.

3       Q.    Okay.   In your training and experience, has there

4   ever been a situation where a negative result on scene turns

5   into a positive result at the lab or anything like that?

6               MR. ZOSH:   Objection, calls for speculation.

7               MR. GARVIN:   I asked him his training and

8       experience.

9               MR. ZOSH:   I would say in his specific

10      experience, not in any manual somewhere.

11              THE COURT:   As to the form.   Rephrase it.

12  BY MR. GARVIN:

13      Q.    Officer, have you ever been a part of cases where

14  an initial swab of suspected residue is conducted and it

15  comes back negative, or was this your first time ever seeing

16  a negative result?

17      A.    No.   It's -- we've had negative.   I would even go

18  on to say we've had negative and both positive, which could

19  either later come back positive or negative from the lab.

20      Q.    Okay.   So these initial tests are just that,

21  they're initial tests?

22      A.    Correct.

23      Q.    Okay.

24      A.    It's a field test.

25      Q.    Now, Officer, what was the purpose of patting him

Szymborski - Garvin - Redirect

1   down that second time if you had already had these negative

2   results?

3       A.   It's in my training and experience, that

4   abnormality, even though at that time it's not a gun, is I

5   don't know exactly what it is.

6       Q.   Okay.  Did you have a suspicion, based upon your

7   training and experience, as to what it was?

8       A.   Yes.

9       Q.   What was your suspicion, based upon your training

10  and experience?

11      A.   That it was narcotics.

12              MR. GARVIN:  Okay.  No further questions.

13              THE COURT:  Mr. Zosh?

14              MR. ZOSH:  Judge, I don't have any further

15       questions.  Thank you.

16              MR. GARVIN:  The People rest for purposes of

17       the hearing.

18              THE COURT:  Does the Defense have any

19       witnesses?

20              MR. ZOSH:  Judge, I don't.  I am going to

21       request an opportunity to put forth a memorandum on

22       this hearing, as well as eliciting certain --

23              THE COURT:  Well, before you finish.  If we

24       don't have any further questions of this witness --

25              MR. ZOSH:  Right.  I do not, sorry.

1          THE COURT:  -- because depending on what this

2    Court's decision is, there may be a trial and you may

3    not want to reveal --

4          MR. ZOSH:  I'm sorry.

5          THE COURT:  To be clear --

6          MR. ZOSH:  I do not have any further

7    questions for this witness.

8          THE COURT:  All right.  And the Defense

9    rests, as well?

10         MR. ZOSH:  Correct.

11         THE COURT:  Sergeant, you may step down.

12   Thank you.

13         THE WITNESS:  Thank you, Judge.

14         (Witness excused.)

15         MR. ZOSH:  Okay.

16         THE COURT:  Your request is to obtain the

17   transcript and then prepare a written memorandum of law

18   instead of making oral argument right now?

19         MR. ZOSH:  I do, Judge.  And I just --

20   obviously we have Exhibit 1 in evidence, so I would be

21   utilizing in my memorandum certain time hacks

22   associated with what we are going to argue, that this

23   was an illegal search of my client.  Thank you.

24         THE COURT:  And, of course, that exhibit is

25   available to the Court.  If you want to highlight

51

1    certain portions of it for my attention, I can do that

2    as I review your written memorandum of law.

3            Mr. Garvin, you wish to do the same?

4            MR. GARVIN:  Yes, Judge.  I would appreciate

5    the opportunity to respond in writing.

6            THE COURT:  So, Mr. Zosh, you'll have the

7    transcript in a week if you order it.

8            MR. ZOSH:  Perfect.

9            THE COURT:  And how much time from that point

10   do you request in order for you to prepare?

11           MR. ZOSH:  I can have -- two weeks, Judge.  I

12   mean, a week later I can have my memo done.

13           THE COURT:  Well, I'll give you two weeks.

14           MR. ZOSH:  Thank you.

15           THE COURT:  I know we have a trial date in

16   the not too distant future.  All right.  So three weeks

17   from today brings us to, what, the 27th, which is

18   Thanksgiving, of course.  So your memo's due on or

19   before Thanksgiving.  Mr. Garvin, you can get yours in

20   in ten days?

21           MR. GARVIN:  Ten days after that, Judge?

22           THE COURT:  Yes.

23           MR. GARVIN:  Yes, that would be fine.

24           THE COURT:  All right.  So that brings us to

25   December 10th.  Why don't we reconvene --

52

1          MR. ZOSH:  We have to have a -- I guess a

2     argument date on our motions for the other case too.

3          THE COURT:  Well, exactly.  So I thought we

4     could do both on the same day.

5          MR. ZOSH:  Okay, that's fine.

6          THE COURT:  You'll have my decision.  The two

7     cases are independent of each other.

8          MR. GARVIN:  That's fine.

9          MR. ZOSH:  Yep.

10          THE COURT:  Can we come back the week of the

11     22nd of December?  Oral argument on --

12          MR. ZOSH:  I can do Monday afternoon.

13          THE COURT:  Monday, the 22nd?

14          MR. GARVIN:  I think Monday would probably be

15     the last day I'm going to be working for the year, so

16     that's fine.

17          THE COURT:  Monday, the 22nd, at 2 p.m. for

18     argument of motions on the unrelated case.

19          MR. ZOSH:  Can we do it at 2:30, Judge?

20          THE COURT:  2:30.

21          MR. ZOSH:  Thank you.

22          THE COURT:  And I'll give you my decision on

23     the 22nd.

24          MR. ZOSH:  And just -- I know the Court has a

25     tight calendar, but I think the gun case is actually

53

1    scheduled for January, so do we want to take that off

2    the calendar at least?

3                 THE COURT:  Well, the gun case you have

4    arguments to counter the search warrant and --

5                 MR. ZOSH:  Right.

6                 THE COURT:  -- to suppress the evidence

7    seized, so -- depending on what my rulings are on your

8    motion.

9                 MR. ZOSH:  Fair enough.

10                THE COURT:  We should keep the date as a

11   control date.

12                MR. ZOSH:  Thank you.

13                MR. GARVIN:  Understood.

14                THE COURT:  Anything else we need to do

15   today?

16                MR. GARVIN:  No, Your Honor.

17                MR. ZOSH:  Nothing from the Defense.  Thank

18   you.

19                THE COURT:  So we are adjourned until

20   December 22nd at 2:30 for decision and argument of

21   motions on the gun case.

22                MR. GARVIN:  Thank you, Your Honor.

23                 (PROCEEDINGS CONCLUDED.)

24

25                      *      *      *

54

1          C E R T I F I C A T I O N

2

3      The foregoing is certified to be a true and accurate

4   transcript of the official court reporter's minutes of the

5   proceedings in the matter of The People of the State of New

6   York vs. Tejuan Fish taken on November 6, 2025.

7
    _____
    Kerry A. Meegan, CSR, NYRCR
8   Official Supreme Court Reporter

9

10                        Type text here

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Tejuan Fish 75783

**(b)** County of Residence of First Listed Plaintiff **Erie**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

pro se

## DEFENDANTS

William Granville

County of Residence of First Listed Defendant **Erie**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☒ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28:1983

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE **Vilardo**

DOCKET NUMBER **25-cv-507**

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

Tejuan Fish 75783
Erie County Correctional Facility
11581 Walden Ave
Alden NY 14004

USDC - WDNY
JAN 22 2026
BUFFALO

United States D
200 U.S. Courthous
2 Niagara Square
Buffalo NY 142



Correction
US POSTAGE ᴵᴹᴾᴵ PITNEY BOWES

ZIP 14202
02 7H        $ 004.44⁰
0006243218    JAN 20 2026

strict Court Clark

e

04

10·6